# MERRIAM LAW FIRM, P.C.
ATTORNEYS AT LAW
1675 BROADWAY, SUITE 1875
DENVER, COLORADO 80202

TED H. MERRIAM
KEVIN A. PLANEGGER*
OLENA RUTH
*ALSO ADMITTED IN ARIZONA

(303) 592-5404
Fax (303) 592-5439
Email:info@merriamlaw.com

February 7, 2020

VIA Certified Mail – Return Receipt Number 7019 1120 0000 3142 9747

Department of the Treasury
Internal Revenue Service
Ogden, UT 84201-0002

    Re: John Douglas and Kathleen Reinhart
        Form 843 – Claim for Refund
        2000 tax year

Dear Sir or Madam:

    We represent the taxpayers, John Douglas and Kathleen Reinhart, and our Power of Attorney is on file with the Internal Revenue Service.

    Enclosed for filing is the taxpayers' Form 843 to claim a refund of an accuracy penalty assessed on September 19, 2019, pursuant to Section 6662 of the Internal Revenue Code, in the amount of $338,816.40 with respect to the taxpayers' 2000 federal income tax return. The taxpayers had reasonable cause for all the positions on the tax return that were ultimately adjusted by the Internal Revenue Service ("IRS"). The taxpayers' Form 843 also includes a claim for interest abatement pursuant to Section 6404(g) based on the IRS failure to provide timely notice to the taxpayers specifically stating the taxpayers' liability and the basis for such liability.

    The taxpayers made full payment of the penalty and interest at issue in this case last year, and this claim for refund is being timely filed within the two-year deadline. We look forward to a quick resolution to this matter.

    Please call me if you have any questions.

Sincerely,

*Kevin Planegger*
Kevin Planegger

KAP
Enclosures
cc: John Douglas and Kathleen Reinhart

**Form 843**
(Rev. August 2011)
Department of the Treasury
Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

Use Form 843 if your claim or request involves:
- (a) a refund of one of the taxes (other than income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding) or a fee, shown on line 3,
- (b) an abatement of FUTA tax or certain excise taxes, or
- (c) a refund or abatement of interest, penalties, or additions to tax for one of the reasons shown on line 5a.

Do not use Form 843 if your claim or request involves:
- (a) an overpayment of income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding (use the appropriate amended tax return),
- (b) a refund of excise taxes based on the nontaxable use or sale of fuels, or
- (c) an overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Name(s) | Your social security number |
|---|---|
| John Douglas and Kathleen Reinhart | ███-██-█809 |
| Address (number, street, and room or suite no.) | Spouse's social security number |
| 16490 W. Ellsworth Ave. | ███-██-█394 |
| City or town, state, and ZIP code | Employer identification number (EIN) |
| Golden, CO 80401 | |
| Name and address shown on return if different from above | Daytime telephone number |
| 534 Rolling Hills Rd.<br>Coppell, Texas 75019 | 303-592-5404 (POA) |

**1** Period. Prepare a separate Form 843 for each tax period or fee year.
From **1/1/2000** to **12/31/2000**

**2** Amount to be refunded or abated:
$ **1,200,000 (Approximately)**

**3** Type of tax or fee. Indicate the type of tax or fee to be refunded or abated or to which the interest, penalty, or addition to tax is related.
☐ Employment  ☐ Estate  ☐ Gift  ☐ Excise  ☑ Income  ☐ Fee

**4** Type of penalty. If the claim or request involves a penalty, enter the Internal Revenue Code section on which the penalty is based (see instructions). IRC section:

**5a** Interest, penalties, and additions to tax. Check the box that indicates your reason for the request for refund or abatement. (If none apply, go to line 6.)
☑ Interest was assessed as a result of IRS errors or delays.
☐ A penalty or addition to tax was the result of erroneous written advice from the IRS.
☑ Reasonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax.

**b** Date(s) of payment(s) ▶  August and October of 2019

**6** Original return. Indicate the type of fee or return, if any, filed to which the tax, interest, penalty, or addition to tax relates.
☐ 706  ☐ 709  ☐ 940  ☐ 941  ☐ 943  ☐ 945
☐ 990-PF  ☑ 1040  ☐ 1120  ☐ 4720  ☐ Other (specify) ▶

**7** Explanation. Explain why you believe this claim or request should be allowed and show the computation of the amount shown on line 2. If you need more space, attach additional sheets.

Please see attachment.

Signature. If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the officer's title must be shown.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

_[signed]_ (POA)       Date  2/3/2020
Signature (Title, if applicable. Claims by corporations must be signed by an officer.)

Signature (spouse, if joint return)       Date

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| Kevin _[illegible]_ | _[signed]_ | 2/3/20 | | |
| Firm's name ▶ | | | Firm's EIN ▶ 84-_[illegible]_3891 | |
| Firm's address ▶ | | | Phone no. _[illegible]_ | |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.   Cat. No. 10180R   Form **843** (Rev. 8-2011)

ATTACHMENT TO FORM 843 – CLAIM FOR REFUND

John Douglas ("Doug") and Kathleen Reinhart – Form 1040 (2000 tax year)

SSN: ███████809; ███████2394

FORM 843, Line 7 – Explanation

Enclosed for filing is the taxpayers' Form 843 to claim a refund of an accuracy penalty assessed on September 19, 2019, pursuant to Section 6662 of the Internal Revenue Code, in the amount of $338,816.40 with respect to the taxpayers' 2000 federal income tax return. The taxpayers had reasonable cause for all the positions on the tax return that were ultimately adjusted by the Internal Revenue Service ("IRS"). The taxpayers' Form 843 also includes a claim for interest abatement pursuant to Section 6404(g) based on the IRS failure to provide timely notice to the taxpayers specifically stating the taxpayers' liability and the basis for such liability. The taxpayers made full payment of the penalty and interest at issue in this case last year, and this claim for refund is being timely filed within the two-year deadline.

Procedural History

The accuracy penalty at issue in this refund claim was assessed on September 19, 2019 in the amount of $338,816.40. The penalty stemmed from a partnership transaction that was audited by the Internal Revenue Service with respect to the taxpayers' 2000 income tax year. The IRS issued a Final Partnership Administrative Adjustment ("FPAA") in 2004 to the partnership, RB-1 Investment Partners, and the partnership filed a Tax Court Petition on November 26, 2004. Ultimately, the partnership conceded the substantive adjustments, and the Tax Court imposed the forty percent gross valuation misstatement penalty under Section 6662 of the Internal Revenue Code. The taxpayers had previously made a cash deposit in 2006 to cover their potential tax liability. They paid the penalty assessment of $338,816.40 plus almost 20 years of interest in August and October of 2019. The penalty has been paid in full, and the taxpayers file this timely refund claim because they should not be liable for this penalty.

Factual Background

The Tax Court, in its opinion dated May 14, 2018, made the following findings of fact:

"The Reinhart family's success in business began with the patriarch of the family, Paul Reinhart, Sr., who worked for companies that made cement, a component of concrete. Mr. Reinhart started out in 1969 at The Western Company, which mixed concrete. While there, he worked with trucks that mixed concrete in made-to-order batches. These trucks can be more efficient than a traditional drum truck because specific quantities of concrete can be mixed on site with less waste. Mr. Reinhart saw a business

Attachment to Form 843
Reinhart
Page 2 of 6

opportunity in these "concrete-mobiles." So, when the Western Company sold its research division in 1971, he and some others bought a couple of the trucks and Custom-Crete, Inc. (Custom-Crete), was born. Within just a few years Custom-Crete's excellent reputation solidified. In 1975, Mr. Reinhart bought out his partners. He wanted a family business, but his two sons, Eric and Doug Reinhart, had both joined the Navy.

Eric graduated from Annapolis in 1977 with a degree in naval architecture. He explained that his "boat-building degree" was "sort of like aerospace engineering" for boats; he didn't take any accounting or tax classes at the Naval Academy. Doug went to Texas A&M University on a Navy ROTC scholarship, and he graduated in 1978 with a degree in business administration. Eric flew planes in the Navy; Doug served on board a frigate. They both helped protect the country's coast during the Cold War, and may even have tracked the same Soviet submarines at the same time--Eric from the sky and Doug from the sea.

When Eric left the Navy in 1984, he had to decide between life as a commercial pilot or working for his dad. He picked his dad, and went to work for Custom-Crete in Dallas as an assistant shop manager. Doug had already left the Navy a couple years earlier; he also joined the family business. Eric and Doug played important roles in the company's growth between the early 1980s and the early 1990s--Eric on the concrete side and Doug on the newer decorative stone side.

Things changed in the early 1990s. Mr. Reinhart was diagnosed with colon cancer and felt unfit to continue as president. Eric stepped into that role in 1992. The company that Eric took over differed greatly from the one that his dad had started just two decades earlier. Custom-Crete had gone from one location in Dallas back in 1971 to offices in Austin, Dallas, and San Antonio--not to mention several decorative-stone locations around Texas. The once-fledgling business was generating about $16 million in annual revenue. As impressive as that growth was, under Eric's leadership between 1992 and 2000 the company expanded at a staggering rate. So much so that by 2000, its total gross receipts hovered around $60 million, almost four times what they were less than a decade earlier, and it had around 300 employees.

At a CCI board meeting in 1999, Bill Boorham, a nonfamily board member, volunteered that a company called Oldcastle Architectural Products Group (Oldcastle) had bought his own business. Boorham was very happy with the outcome—the new owner kept the old management in place. He offered to approach Oldcastle about selling CCI. The family was interested. Boorham went fishing, and Oldcastle took the bait.

Oldcastle, it turns out, excels through anonymity. It appears that it is a rather large company, but one that typically keeps the name and management of its regional acquisitions. And that's what happened here—Oldcastle made an offer in February 2000 to acquire CCI and its affiliated entities for around $30 million. It revised the offer a month later, and in July 2000 the Reinharts signed an approximately $30 million stock-

Attachment to Form 843
Reinhart
Page 3 of 6

and-asset purchase agreement. Eric, Doug, and Allyson split most of the sale proceeds. On their 2000 tax return, Doug and Kathleen Reinhart reported a gain from the sale of over $7 million."

During a yearly financial plan meeting with Mr. Randy Smith of the Smith Frank financial consulting firm, Mr. Smith recommended that Eric explore entering into what he described as a "capital gains transaction." Mr. Smith was familiar with the transaction as some of his other clients had participated in the transaction with counsel from the national law firm of Jenkens & Gilchrist. Mr. Smith described the transaction as one where there could be significant gains made over a short period of time and that there were certain favorable tax consequences. Mr. Smith introduced Eric to both Mr. Craig Brubaker, with Deutsche Bank and to Mr. Erwin Mayer, the "tax guru" with Jenkens & Gilchrist. Eric researched the law firm of Jenkens & Gilchrist, and found them to have a reputation as one of the biggest and best law firms in the country. Eric ultimately persuaded Doug to invest in the transaction, after Doug had done his own background research and felt comfortable with the veracity of the legal and accounting advice.

Ordinarily, Eric prepared his own Federal Income Tax Returns. However, due to the complexity of the transaction and the use of various partnerships and corporations, he requested that the CPA firm of Weaver and Tidwell prepare the partnership and corporate returns. Eric went to Weaver and Tidwell because of Mr. Marion McBryde. Mr. McBryde had prepared Eric's father's returns, Doug's returns and the returns of Custom-Crete since the early 1970s. Mr. McBryde was also a member of the Custom-Crete Board of Directors, and he had assisted Custom-Crete over the years in structuring the purchase and sale of assets for maximum tax savings.

Weaver and Tidwell subsequently prepared the partnership returns for the investment vehicles, RB-1 Investment Partners ("RB-1") and E&D Investor, Inc. Mr. McBryde acted as the relationship partner and was essentially the contact between Eric and Weaver and Tidwell's tax department. The actual returns were prepared by Mr. Philippe Simeons. In preparing the returns, Mr. Simeons reviewed and read a legal tax opinion letter prepared by Jenkens and Gilchrist, along with the underlying transaction documents from Deutsche Bank. He prepared detailed schedules, including a trial balance and inside and outside basis memorandums. The returns were then reviewed internally by Ms. Hilda Merritt, Mr. Simoens immediate supervisor. The returns were also reviewed by Mr. Frank Thompson, the head of Weaver and Tidwell's tax department. Mr. Thompson was personally familiar with the transaction as he had another client who had also participated in the Jenkens and Gilchrist transaction.

After the returns were prepared and reviewed internally by Weaver and Tidwell, Mr. McBryde requested that Jenkens & Gilchrist independently review the returns for accuracy. Minor adjustments were made to the returns at the suggestion of Jenkens & Gilchrist, but none of the corrections suggested by Jenkens & Gilchrist altered the bottom line of the returns prepared by Weaver and Tidwell. In August of 2001, Mr. McBryde

executed the returns on behalf of Weaver and Tidwell. When he signed the returns he believed they were true and correct and had been reviewed by both the head of the Weaver and Tidwell tax department and Jenkens and Gilchrist. Eric and Doug Reinhart were very comfortable with the professional advice that they received and the degree of review between a reputable CPA firm and leading national law firm. The returns were timely filed on September 4, 2001.

## Legal Authority and Analysis

Section 6662 imposes a 40 percent penalty on an underpayment of tax required to be shown on the tax return that is attributable to a gross valuation misstatement. Pursuant to section 6664, the accuracy-related penalty shall not be imposed if the taxpayer establishes there was reasonable cause for the position that resulted in the penalty, and the taxpayer acted in good faith in taking that position. Stobie Creek v. United States, 608 F.3d 1366 (Fed. Cir. 2010).

A taxpayer has the burden of proving the Commissioner's accuracy related penalty determinations under Section 6662 are incorrect. See Neonatology Assoc., P.A. v. Comm'r, 299 F.3d 221, 233 (3d Cir. 2002); Hoyden v. Comm'r, 204 F.3d 772, 775 (7th Cir. 2000). In this case, the taxpayers clearly had reasonable cause for the position on the tax return.

Reasonable reliance on the advice of competent and independent counsel who analyzed all the pertinent facts and authorities, and who unambiguously states there is a greater than fifty 50 percent likelihood that the tax treatment of the item will be upheld if challenged by the IRS, is a defense to the imposition of an accuracy-related penalty. Treas. Reg. § 1.6664-4(b)(1); United States v. Boyle, 469 U.S. 241, 246, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). That is the case here, where the taxpayers sought tax, accounting and legal advice, and were assured that the position had greater than 50 percent likelihood of success on the merits.

The Treasury regulations set forth several requirements that must be shown to establish such reliance. First, the taxpayer must show the advice was based on all pertinent facts and circumstances and the law as it relates to those facts and circumstances. Treas. Reg. § 1.6664-4(c)(1)(i). Second, the advice relied on must not be based on any unreasonable factual or legal assumptions, and must not unreasonably rely on the representations, statements, findings, or agreements of the taxpayer or any other person. Treas. Reg. § 1.6664-4(c)(1)(ii). Third, the taxpayer's reliance on the advice must itself be objectively reasonable. The reasonableness of any reliance turns on the quality and objectivity of the advice. Stobie Creek, 608 F.3d at 1381 (citing Klamath Strategic Invs. Fund ex rel. St. Croix Ventures v. United States, 568 F.3d 537, 548 (5th Cir. 2009); Chamberlain v. Comm'r, 66 F.3d 729 (5th Cir. 1995); Swayze v. United States, 785 F.2d 715, 719 (9th Cir. 1986)). For example, reliance is not reasonable if the taxpayer knew or should have known that the transaction was `too good to be true,' based on all the

Attachment to Form 843
Reinhart
Page 5 of 6

circumstances, including the taxpayer's education, sophistication, business experience, and purposes for entering into the transaction. Stobie Creek, 608 F.3d at 1382 (citing Treas. Reg. § 1.6664-4(c); Hansen v. C.I.R., 471 F.3d 1021, 1032 (9th Cir. 2006)).

This case is eerily similar to a recent decision from United States District Court in Wyoming, McNeill v. United States, 237 F.Supp. 3d. 1171 (Dis. Wyo. 2017). First, the taxpayer, like Mr. Reinhart, was a Naval officer, and highly successful businessman. At the same time, however, he was not familiar with complex investments and related tax consequences. The court determined that although Mr. McNeill was the chairman and CEO of a public company and despite his business sophistication, he had little tax knowledge and relied on his advisors including Ernst & Young, finding reasonable cause in claiming a $20 million loss in a tax shelter transaction in which he was the "tax matters partner." Similarly, Mr. Reinhart had little tax knowledge and also relied on accounting, tax and legal professionals to report the transaction that was audited by the IRS. In addition to relying on professionals, Mr. Reinhart also relied on his brother, Eric, who was the tax matters partner of the investment vehicle, RB-1 Investment Partners.

The facts of this case clearly establish that John Douglas Reinhart relied on qualified accounting and legal counsel with respect to the preparation of his return. The transaction was approved by a leading national law firm and the returns were prepared by a qualified and trusted CPA firm. The relevant returns were extensively reviewed and approved by professionals. There should have been no penalties assessed in this case, and the penalties should now be refunded in full.

## Section 6751

Section 6751 requires that IRS explain any penalty to be assessed and that penalty's computation in a notice to the taxpayer. Additionally, IRS is required to secure written, supervisory approval for its initial determination of such assessment. The Senate Finance Committee's report on section 6751 sheds light on the purpose of these additions to the Internal Revenue Code. The report expresses the Committee's concern that "[prior] law d[id] not require the IRS to show how penalties are computed," and in some cases, penalties could be "imposed without supervisory approval." S. Rep. No. 105–174, at 65 (1998). As reasons for the change, the report states "[t]he Committee believes that taxpayers are entitled to an explanation of the penalties imposed upon them. The Committee believes that penalties should only be imposed where appropriate and not as a bargaining chip." Id.

The taxpayers have not received the required documentation for the penalty assessed against them on September 9, 2019. Without this requisite documentation, the assessment is void and illegal, in addition to the taxpayers' position that the penalty should not have been assessed anyway based on their reasonable cause.

Attachment to Form 843
Reinhart
Page 6 of 6

## Section 6404(g)

Section 6404(g) generally suspends interest and certain penalties if the IRS does not contact a taxpayer regarding possible adjustments to the taxpayer's liability with a specified period of time. With respect to the 2000 tax year, the IRS was required to provide notice of the taxpayer's potential tax liability within 18 months of the (extended) due date of the tax return. In this case, the taxpayers' 2000 federal income tax return was filed by the extended due date of October 15, 2001, and the 18 month period expired on April 15, 2003. The IRS did not provide any notice of the taxpayers' potential tax due until late 2004, and all interest should be abated/refunded for this period (approximately 15 months).

| Form **2848** (Rev. January 2018) Department of the Treasury Internal Revenue Service | **Power of Attorney and Declaration of Representative** ▶ Go to www.irs.gov/Form2848 for instructions and the latest information. | OMB No. 1545-0150 **For IRS Use Only** Received by: Name _____ Telephone _____ Function _____ Date __/__/__ |
|---|---|---|

**Part I   Power of Attorney**

Caution: A separate Form 2848 must be completed for each taxpayer. Form 2848 will not be honored for any purpose other than representation before the IRS.

**1   Taxpayer information.** Taxpayer must sign and date this form on page 2, line 7.

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| JOHN DOUGLAS REINHART<br>16490 W. ELLSWORTH AVE.<br>GOLDEN, CO 80401 | ███-██-█809 |
| | Daytime telephone number          Plan number (if applicable) |

hereby appoints the following representative(s) as attorney(s)-in-fact:

**2   Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| Ted H. Merriam<br>1625 Broadway, Suite 770<br>Denver, CO 80202 | CAF No. 8000-33841R<br>PTIN None<br>Telephone No. 303-592-5404<br>Fax No. 303-592-5439 |
| Check if to be sent copies of notices and communications ☑ | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

| Name and address | |
|---|---|
| Olena Ruth<br>1625 Broadway, Suite 770<br>Denver, CO 80202 | CAF No. 0307-75488R<br>PTIN None<br>Telephone No. 303-592-5404<br>Fax No. 303-592-5439 |
| Check if to be sent copies of notices and communications ☐ | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

| Name and address | |
|---|---|
| Kevin A. Planegger<br>1625 Broadway, Suite 770<br>Denver, CO 80202 | CAF No. 8006-06829R<br>PTIN None<br>Telephone No. 303-592-5404<br>Fax No. 303-592-5439 |
| (Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____<br>PTIN _____<br>Telephone No. _____<br>Fax No. _____ |
| (Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

to represent the taxpayer before the Internal Revenue Service and perform the following acts:

**3   Acts authorized (you are required to complete this line 3).** With the exception of the acts described in line 5b, I authorize my representative(s) to receive and inspect my confidential tax information and to perform acts that I can perform with respect to the tax matters described below. For example, my representative(s) shall have the authority to sign any agreements, consents, or similar documents (see instructions for line 5a for authorizing a representative to sign a return).

| Description of Matter (Income, Employment, Payroll, Excise, Estate, Gift, Whistleblower, Practitioner Discipline, PLR, FOIA, Civil Penalty, Sec. 5000A Shared Responsibility Payment, Sec. 4980H Shared Responsibility Payment, etc.) (see instructions) | Tax Form Number (1040, 941, 720, etc.) (if applicable) | Year(s) or Period(s) (if applicable) (see instructions) |
|---|---|---|
| INCOME | 1040 | 1995 - 2021 |
| | | |
| | | |

**4   Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for **Line 4. Specific Use Not Recorded on CAF** . . . . . . . . . . . . . . . ▶ ☐

**5a   Additional acts authorized.** In addition to the acts listed on line 3 above, I authorize my representative(s) to perform the following acts (see instructions for line 5a for more information):  ☐ Access my IRS records via an Intermediate Service Provider;
☐ Authorize disclosure to third parties;   ☐ Substitute or add representative(s);   ☐ Sign a return; _____

☐ Other acts authorized: _____

For Privacy Act and Paperwork Reduction Act Notice, see the instructions.        Cat. No. 11980J        Form **2848** (Rev. 1-2018)

Form 2848 (Rev. 1-2018) Page **2**

**b Specific acts not authorized.** My representative(s) is (are) not authorized to endorse or otherwise negotiate any check (including directing or accepting payment by any means, electronic or otherwise, into an account owned or controlled by the representative(s) or any firm or other entity with whom the representative(s) is (are) associated) issued by the government in respect of a federal tax liability.

List any other specific deletions to the acts otherwise authorized in this power of attorney (see instructions for line 5b):

**6 Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**7 Signature of taxpayer.** If a tax matter concerns a year in which a joint return was filed, each spouse must file a separate power of attorney even if they are appointing the same representative(s). If signed by a corporate officer, partner, guardian, tax matters partner, partnership representative, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the legal authority to execute this form on behalf of the taxpayer.

▶ **IF NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THIS POWER OF ATTORNEY TO THE TAXPAYER.**

| Signature | Date | Title (if applicable) |
|---|---|---|
| [signed] | 5-7-19 | |

| JOHN DOUGLAS REINHART | |
|---|---|
| Print Name | Print name of taxpayer from line 1 if other than individual |

### Part II  Declaration of Representative

Under penalties of perjury, by my signature below I declare that:

- I am not currently suspended or disbarred from practice, or ineligible for practice, before the Internal Revenue Service;
- I am subject to regulations contained in Circular 230 (31 CFR, Subtitle A, Part 10), as amended, governing practice before the Internal Revenue Service;
- I am authorized to represent the taxpayer identified in Part I for the matter(s) specified there; and
- I am one of the following:

  a **Attorney**—a member in good standing of the bar of the highest court of the jurisdiction shown below.
  b **Certified Public Accountant**—a holder of an active license to practice as a certified public accountant in the jurisdiction shown below.
  c **Enrolled Agent**—enrolled as an agent by the Internal Revenue Service per the requirements of Circular 230.
  d **Officer**—a bona fide officer of the taxpayer organization.
  e **Full-Time Employee**—a full-time employee of the taxpayer.
  f **Family Member**—a member of the taxpayer's immediate family (spouse, parent, child, grandparent, grandchild, step-parent, step-child, brother, or sister).
  g **Enrolled Actuary**—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Internal Revenue Service is limited by section 10.3(d) of Circular 230).
  h **Unenrolled Return Preparer**—Authority to practice before the IRS is limited. An unenrolled return preparer may represent, provided the preparer (1) prepared and signed the return or claim for refund (or prepared if there is no signature space on the form); (2) was eligible to sign the return or claim for refund; (3) has a valid PTIN; and (4) possesses the required Annual Filing Season Program Record of Completion(s). See **Special Rules and Requirements for Unenrolled Return Preparers** in the instructions for additional information.
  k **Qualifying Student**—receives permission to represent taxpayers before the IRS by virtue of his/her status as a law, business, or accounting student working in an LITC or STCP. See instructions for Part II for additional information and requirements.
  r **Enrolled Retirement Plan Agent**—enrolled as a retirement plan agent under the requirements of Circular 230 (the authority to practice before the Internal Revenue Service is limited by section 10.3(e)).

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THE POWER OF ATTORNEY. REPRESENTATIVES MUST SIGN IN THE ORDER LISTED IN PART I, LINE 2.**

Note: For designations d-f, enter your title, position, or relationship to the taxpayer in the "Licensing jurisdiction" column.

| Designation— Insert above letter (a–r). | Licensing jurisdiction (State) or other licensing authority (if applicable). | Bar, license, certification, registration, or enrollment number (if applicable). | Signature | Date |
|---|---|---|---|---|
| a | Colorado | 9100 | [signed] | 5-7-19 |
| a | Colorado | 42592 | [signed] | 5-7-19 |
| a | Colorado | 29084 | [signed] | 5-7-19 |
| | | | | |

Form **2848** (Rev. 1-2018)

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   DEPARTMENT OF THE TREASURY
   INTERNAL REVENUE SERVICE
   OGDEN, UT 84201-0002

   9590 9402 5614 9274 3192 76

2. Article Number (Transfer from service label)

   7019 1120 0000 3142 9747

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

   X

   ☐ Agent
   ☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☐ Adult Signature
   ☐ Adult Signature Restricted Delivery
   ☐ Certified Mail®
   ☐ Certified Mail Restricted Delivery
   ☐ Collect on Delivery
   ☐ Collect on Delivery Restricted Delivery
   ☐ Mail
   ☐ Mail Restricted Delivery
   (over $500)

   ☐ Priority Mail Express®
   ☐ Registered Mail™
   ☐ Registered Mail Restricted Delivery
   ☐ Return Receipt for Merchandise
   ☐ Signature Confirmation™
   ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

Sender: Please print your name, address, and ZIP+4® in this box®

MERRIAM LAW FIRM, P.C.
1675 BROADWAY, SUITE 1875
DENVER, CO 80202

United States Postal Service

RECEIVED
MAR 17 2023
THM, PC

RE: REINHART

